# Henderson *v.* Jennings, Appellant.

*Contract—Sale—Passing of title—Damages—Measure of damages.*

1. Where there is a sale of goods generally, no property in them passes until delivery, because until then the very goods are not ascertained. But where by the contract itself the vendor appropriates to the vendee a specific chattel, and the latter thereby agrees to take that specific chattel and to pay the stipulated price, the parties are then in the same situation as they would be after a delivery of goods in pursuance of the general contract. The very appropriation of the chattel is equivalent to delivery by the vendor, and the assent of the vendee to take the specific chattel, and to pay the price is equivalent to his accepting possession. The effect of the contract, therefore, is to vest the property in the bargainee. If there is a breach the measure of damages is the stipulated contract price, and not the excess of the contract price over the market value at the time the actual delivery was to be made. If the chattel has a potential existence at the time the contract is made, it is immaterial that it does not come into actual existence until thereafter.

2. A material man agreed in writing with a person interested in a building operation to sell and deliver material to the actual builder in consideration of one-half cash and one-half on a mortgage on one of the properties. The agreement particularly described the mortgage and the amount of it, and the other contracting party agreed to purchase it at its face value within sixty days after its delivery to the material man "without regard to title, completion, street improvements, liability for mechanics or municipal claims, as I purchase simply what you get." The mortgage was not in actual existence at the date of the agreement, but was created thereafter. The material man furnished material, received the mortgage and tendered at the expiration of the sixty days, but the other party refused to accept it or pay for it.

*Held,* that the property in the mortgage passed as of the date of the contract, and that the measure of damages for the breach was the stipulated contract price, and not the difference between the contract price and the market price, as of the date when the mortgage was to be delivered.

Argued March 29, 1910. Appeal, No. 383, Jan. T., 1909, by defendant, from judgment of C. P. No. 2, Phila. Co., June T., 1908, No. 4,349, on verdict for plaintiff in case of Norris E. Henderson, trading as the N. E. Henderson Hardware & Paint Company, v. John W. Jennings. Before FELL, C. J., POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit for breach of contract to purchase a mortgage. Before SULZBERGER, P. J.

The facts are stated in the opinion of the Supreme Court.

At the trial the defendant submitted, inter alia, the following points:

5. The measure of damages in this case is the difference in the selling price of the mortgage and its market value at the time of breach, and as there is no evidence of such market value, you cannot find for the plaintiff for that part of his claim which relates to the purchase price of the mortgage. *Answer:* Declined. [5]

6. Under all the evidence you cannot find for the plaintiff for that part of his claim which relates to the purchase price of his mortgage. *Answer:* Declined. [6]

Verdict and judgment for plaintiff for $1,692.98. Defendant appealed.

*Errors assigned* were (5, 6) above instructions, quoting them.

*Francis J. Maneely,* with him *Morris Dos Passos,* for appellant.—The last pronouncement of the Supreme Court of this state on the question of the measure of damages for the breach of a contract of this kind by a

vendee is in Sharpsville Furnace Co. v. Snyder, 223 Pa. 372. See also Glass Co. v. Ladwig, 33 Pa. Superior Ct. 506; Ballentine v. Robinson, 46 Pa. 177; Keeler v. Schott, 1 Pa. Superior Ct. 458; Reynolds v. Callender, 19 Pa. Superior Ct. 610; Gordon v. Norris, 49 N. H. 376; White v. Solomon, 164 Mass. 516 (42 S. E. Repr. 104); Allen v. Jarvis, 20 Conn. 38.

*William H. Peace,* with him *Alfred D. Wiler,* for appellee.—This case is ruled by Reynolds v. Callender, 19 Pa. Superior Ct. 610.

To the same effect are the cases of Field v. Schuster, 26 Pa. Superior Ct. 82; Heilbrunn v. Weislow, 129 App. Div. (N. Y.) 532; Pearson v. Mason, 120 Mass. 53.

OPINION BY MR. JUSTICE STEWART, May 2, 1910:

The defendant was interested—to what extent we do not know, nor is it material—with one Sharp in a building operation in Philadelphia. The plaintiff proposed to supply them with the hardware required in the construction of certain buildings for the sum of $3,072. The terms of payment offered him were fifty per cent cash and fifty per cent in a second mortgage or mortgages upon the buildings. He at first declined these terms. Thereupon it was proposed that if he would accept the terms offered, Jennings would purchase from him the mortgage or mortgages within sixty days after they were delivered to him at the face value, less ten per cent. This was satisfactory to the plaintiff and the contract was accordingly entered into, Jennings on a separate paper obligating himself to purchase from the plaintiff the particular mortgage for $1,550 which plaintiff had finally agreed to accept. Plaintiff having received the mortgage, at the expiration of, not within, the sixty days, requested Jennings to redeem his promise by purchasing the mortgage. Jennings refused, and plaintiff then brought this action to recover the price Jennings had agreed to pay. The trial resulted in a verdict for plaintiff for the amount

claimed. There is but one assignment of error that calls for consideration. The recovery was permitted for the full contract price for the mortgage. It is insisted that the true and only measure of damage in such case is the difference between the contract price and the market value at the time and place of delivery, and that inasmuch as plaintiff had not shown any loss he was not entitled to recover anything. The question turns on the construction of the contract. Jennings' written offer was in these words, addressed to the plaintiff: "In consideration of your entering into an agreement with Richard H. Sharp and your paying me a commission of 10% on the face amount thereof, I hereby agree to purchase from you within sixty days after its delivery to you a certain mortgage of $1,550, described in schedule C of your contract with Mr. Sharp, and in connection with the ninety-six buildings about to be erected in the Forty-second ward of Philadelphia, without regard to title, completion, street improvements, liability for mechanics' or municipal claims, as I purchase simply what you get." The jury found as a fact that plaintiff accepted this offer, and relying upon it, contracted with Sharp to supply the required hardware for the buildings, and accept in part consideration the mortgage described in the offer. This states the whole contract. As between the plaintiff and Jennings, touching the mortgage, was it an actual sale or merely a contract to purchase? In other words, was it an executed or executory contract? If the former, then title to the mortgage at once passed to Jennings, subject to the plaintiff's right of lien until the conditions were complied with, or until full delivery: Winslow, Lanier & Co. v. Leonard, 24 Pa. 14; and in such case the measure of damage would be the contract price: Ballentine v. Robinson, 46 Pa. 177. In the case last cited we have this very satisfactory exposition of the law. "Where a sale of goods has been made and they have been delivered, it is plain the measure of damages for nonpayment is the stipulated price. About that there is no

difficulty. Doubts, however, have been entertained, where goods have been sold and not delivered in consequence of the refusal of the buyer to complete the contract. It has sometimes been said that the standard for measurement is the excess of the contract price over the market value. Yet where the subject of the same is a specific article, where the contract has been so far completed as to pass the property in the article to the vendee, the possession being retained only because the price is not paid, there seems to be no good reason why the vendor should not be permitted to recover the agreed value. He has fully complied with all that he was under obligations to do. He has parted with his property and given the full equivalent for the stipulated price. His right to the property having passed to the vendee, his right to the price would appear to be consummate." This marks the distinction as to the measure of damages in case where the default is in connection with an executed contract, and where it is in connection with a simple contract to sell. In the latter, the measure of damage is determined by the general rule of difference between contract price and market value; in the former, the contract price is the measure. Did the right of property in the mortgage, as between vendor and vendee, pass to the latter upon the plaintiff's acceptance of the defendant's offer? This depends upon the intention of the parties, as it is to be derived from the contract and its circumstances. We are of opinion that it did pass. The subject of the sale was a specific thing, distinctly designated in the contract, and unassociated with anything else. The language of the offer following a description of the mortgage, is, "I purchase simply what you get." "Where there is a sale of goods generally, no property in them passes until delivery, because until then the very goods are not ascertained. But where by the contract itself the vendor appropriates to the vendee a specific chattel, and the latter thereby agrees to take that specific chattel and to pay the stipulated price, the parties

are then in the same situation as they would be after a
delivery of goods in pursuance of the general contract.
The very appropriation of the chattels is equivalent to
delivery by the vendor, and the assent of the vendee to
take the specific chattel, and to pay the price is equiva-
lent to his accepting possession.  The effect of the con-
tract, therefore, is to vest the property in the bargainee:"
1 Benjamin on Sales, sec. 315.  The above quotation
from the text of the authority cited, is adopted from the
opinion of Baron PARKE in Dixon v. Yates, 5 B. & Ad.
313.  The rule as there expressed has been very generally
accepted and enforced, confining it of course to the
controversies between vendor and vendee, with no inter-
vening rights to be disturbed.  Our own state authori-
ties give most unqualified recognition to the rule.  The
case of Winslow v. Leonard, supra, is directly in point.
Equally so is Ballentine v. Robinson, 46 Pa. 177.  No
less explicit are Gonser v. Smith, 115 Pa. 452, and Com.
v. Hess, 148 Pa. 98.  The opinion of PAXSON, C. J., in
the case last cited contains a very full and careful review
of all the authorities on the subject.  We see nothing in
the facts of the case to take it out of the operation of this
general rule.  That the mortgage was not in actual ex-
istence at the time the contract was entered into is un-
important.  "In relation to things not yet in existence,
or not yet belonging to the vendor, the law considers
them as divided into two classes, one of which may be
sold, while the other, can only be the subject of an agree-
ment to sell, of an executory contract.  Things not yet
existing which may be sold, are those which may be said
to have a potential existence, that is, things which are
the natural product or expected increase of something
already belonging to the vendor:" 1 Benjamin on Sales,
sec. 78.  The rule is thus stated by 2 Story on Contracts,
sec. 75.  "So, also, although the thing to be sold have no
actual and present existence, yet if it be the anticipated
product or increase of something to which the seller has a
vested right, the sale will be good."  Under this general

rule it has been decided that the earnings of an engagement of service already entered into may be the subject of a present sale. "One may assign earnings arising out of a contract of service already entered into, but not those of a prospective service. In the one case the earnings have a potential existence, though there is a possibility that they may never materialize; in the other there is nothing more than a mere possibility of existence." Hartley v. Tapley, 68 Mass. 565; Augur v. N. Y. Belting & Packing Co., 39 Conn. 536, and Farnsworth v. Jackson, 32 Maine, 419, further illustrate the rule. In the present case the obligation on part of the defendant became binding at once upon the plaintiff's entering into the contract with Sharp, and plaintiff at once acquired a present right to the mortgage under his contract which would ripen into a perfect title by lapse of time. It was not the case of a mere possibility coupled with no interest; nor was it a case of one selling something which he did not have but which he expected to buy in the general market. This one particular mortgage was the thing sold, and at the time of the sale nobody had any right to it except the plaintiff. The assignments of error are overruled and the judgment is affirmed.